## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLAIMSERVICEPROVIDER, INC., ET AL.** | **CIVIL ACTION** |
| **versus** | **No. 06-2475** |
| **THE ST. PAUL TRAVELERS COMPANIES INC., ET AL.** | **SECTION:  I/3** |

### ORDER AND REASONS

Before the Court are defendants' motions to dismiss under Fed. R. Civ. P. 9(b), 12(b)(3), and 12(b)(6), as well as defendants' motion for more definite statement under 12(e). Plaintiffs are Claimserviceprovider, Inc. ("CSP"), Top Catastrophe Team Services ("Top Catastrophe"), and Edmond Smith, d/b/a/ Top Catastrophe.  Defendants are National Catastrophe Adjusters, Inc. ("NCA"), Integrated Claims Solutions, LLC ("ICS"), and The St. Paul Travelers Companies, Inc. ("St. Paul"). For the following reasons, defendants' motion to dismiss under 12(b)(3) for improper venue is **GRANTED**, all other motions are

**DISMISSED AS MOOT,** and plaintiffs' lawsuit is **DISMISSED** in its entirety.

***BACKGROUND***

In the aftermath of Hurricane Katrina, St. Paul contracted with NCA and ICS to assist in administering the St. Paul insurance claim process.  In turn, NCA and ICS contracted with CSP to handle claims and recruit professional adjusters around the Gulf Coast region and aid in processing the thousands of claims expected to be received by St. Paul.[1]  Plaintiffs state that NCA and ICS were interchangable entities, sharing responsibility for the claims handling process and sharing office space and employees.[2]

The original contract, entitled "Agreement to Provide Services" ("recruiting agreement"), effective on September 10, 2005, provided that CSP would recruit adjusters for NCS and would receive a five percent override on the gross fee billing "for the duration of the assignment or two years."[3]  CSP recruited Top Catastrophe as part of this recruiting contract arrangement.[4] NCA and CSP then entered into an "NCA Independent Contractor

---

[1]Rec. Doc. No. 1-1, pp. 3-4.

[2]*Id.* at 4.

[3]Rec. Doc. No. 6-4, p. 1.

[4]Rec. Doc. No. 1-1, p. 4.

Agreement," effective October 14, 2005, whereby CSP agreed to adjust claims in exchange for 65% of NCA's "adjuster fee basis amount."[5]  The independent contractor agreement contained a forum selection clause whereby "[b]oth parties agree that the sole venue for litigation of any dispute arising under this agreement will be in Marion County, Indiana."[6]

On November 2, 2005, a contract similar to that noted above and containing the same forum selection clause was executed between NCA and Top Catastrophe.[7]  Plaintiffs concede that these clauses, if applicable to their claims, are mandatory in nature.[8] Top Catastrophe retained dozens of professional adjusters whom it exclusively employed to provide adjusting services.

---

[5]Rec. Doc. No. 6-4, p. 3.

[6]Rec. Doc. No. 6-4, p. 3.

[7]Rec. Doc. 6-4, p. 4.  The agreement does not contain an effective date, but it was fully executed with the signature of NCA's representative on November 2, 2005.

[8]Rec. Doc. No. 12-1, pp. 3-4 ("[C]omplainants recognize that the clause is a mandatory clause in that, if enforceable, it exclusively limits litigation to be filed in the County of Marion, State of Indiana. Therefore, complainants do not contest the mandatory nature of the forum selection clause, only that the clause is unenforceable.").  Since the clause is mandatory, "the clause will be enforced," *Dorsey v. N. Life Ins. Co.*, No. 04-0342, 2004 WL 2496214, at *3 (E.D. La. Nov. 5, 2004) (Africk, J.), if applicable to plaintiffs' claims.
The agreements, on their face, only apply to NCA, not ICS.  However, neither NCA/ICS nor plaintiffs dispute that the forum selection clause is equally applicable to plaintiffs' claims against NCA and ICS, as plaintiffs state the two groups are "interchangable entities."  Rec. Doc. No. 1-1, p. 4. This "uncontroverted fact[] contained in the plaintiff[s'] complaint will be taken as true."  *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002).  Therefore, this Order refers to the combined entity as "NCA/ICS."

Based on representations alleged to be made by the defendants, Top Catastrophe expended resources to secure the services of fifty independent adjusters.  In alleged reliance on similar representations, CSP expended resources to secure the services of twenty-five independent professional adjusters and exclusively employed dozens of adjusters.  The agreements between both plaintiffs and the adjusters contained non-compete clauses of which defendants were allegedly aware.[9]

Plaintiffs allege that, despite their timely and accurate services, defendants refused to pay them for their adjusting services.  Defendants alleged refusal to pay Top Catastrophe for its services also eliminated the fees that CSP would have received under the recruiting agreement, since CSP's fees under that agreement were directly dependent on Top Catastrophe's billings.[10]  As a result, plaintiffs could not fully compensate the adjusters in their employ.[11]

On or about November 8, 2005, plaintiffs allege that a NCA/ICS officer, with the express, implied, or constructive authority of St. Paul, conducted a secret, pre-arranged meeting with Top Catastrophe adjusters in New Orleans.  At this meeting,

---

[9]Rec. Doc. No. 1-1, pp. 6-7.

[10]Rec. Doc. No. 101, p. 9.

[11]Rec. Doc. No. 101, p. 8.

the official allegedly told Top Catastrophe employees that they would not be paid for the claims on which they had worked unless they breached their agreements with Top Catastrophe and signed contracts directly with NCA/ICS.  As a result of these actions, almost all of the adjusters left Top Catastrophe and signed an agreement with NCA/ICS to continue handling St. Paul claims.  On November 17, 2005, NCA then terminated the contract with Top Catastrophe, purportedly for substandard claims handling.[12] Plaintiffs also allege that defendants or their agents unlawfully entered Top Catastrophe's offices and knowingly took computers, documents, and other property of Top Catastrophe.[13]

In December 2005, officers of NCA/ICS allegedly began directly communicating with CSP employees without the involvement of CSP's officers.  Upon learning of these secret discussions, CSP directed that NCA/ICS "cease and desist" such unauthorized communications.  Still, NCA/ICS representatives allegedly met privately with each CSP adjuster in and around New Orleans to recruit them from CSP, allegedly making assertions similar to those made to Top Catastrophe's employees.  As a result, all of the adjusters terminated their employment with CSP and signed an

---

[12]Rec. Doc. No. 1-1, pp. 9-10.

[13]Rec. Doc. No. 1-1, pp. 10-11.

agreement with NCA/ICS to continue handling St. Paul claims.[14] At all times, plaintiffs allege that NCA/ICS worked under the authority and direction of St. Paul, its agents, and representatives.[15]

On May 11, 2006, plaintiffs filed this lawsuit against NCA, ICS, and St. Paul.[16]  In their complaint, plaintiffs allege: 1) misrepresentation; 2) unfair trade practices; 3) tortious and intentional interference with Top Catastrophe's employee contracts; 4) tortious and intentional interference with CSP's employee contracts; 5) conversion; 6) breach of contract with Top Catastrophe; 7) breach of contract with CSP; and 8) negligence and violation of La. Civ. Code art. 2315.[17]  In their September 12, 2006, response to defendants' motion to dismiss, plaintiffs withdrew their claims of tortious interference with contract.[18]

Defendants NCA/ICS first assert that venue in this Court is improper.  They assert that, pursuant to Fed R. Civ. P. 12(b)(3), plaintiffs' claims against them must be dismissed because the forum selection clause in the independent contractor agreements

---

[14]Rec. Doc. No. 1-1, pp. 11-12.

[15]Rec. Doc. No. 1-1, p. 12.

[16]Rec. Doc. No. 1-1.

[17]Rec. Doc. No. 1-1, pp. 12-23.

[18]Rec. Doc. No. 13, p. 10.

provides that Marion County, Indiana[19] is the sole venue for litigation of any dispute arising under the agreements.[20] Plaintiffs counter that venue in this Court is proper because: 1) the claims made in the complaint fall outside the scope of the agreements; and 2) public policy disfavors enforcement of the forum selection clause.[21]  Defendant, St. Paul, notes that it is not a party to the agreements and asserts that this Court remains the proper forum to adjudicate the claims against it.[22]

### ANALYSIS

*A. Standard of Review of a Forum Selection Clause*

NCA/ICS have moved pursuant to Fed. R. Civ. P. 12(b)(3) to dismiss this action because of the forum selection clause.  The majority of courts conform to the standard that once a defendant has raised the issue of improper venue by motion, the burden is on the plaintiff to sustain the choice of venue.  *Smith v. Lucent Technologies, Inc.*, No. 02-0481, 2004 WL 515769, at *6 (E.D. La.

---

[19]The agreements provide, "Both parties agree that the sole venue for litigation of any dispute arising under this agreement will be in Marion County, Indiana, in accordance with Indiana Rules of Trial Procedure."  Rec. Doc. No. 6-4, pp. 3-4.  Given the clause's geographic limitation and its specific requirement that Indiana Rules of Trial Procedure apply, the Court construes the forum selection clause as limiting venue to the state courts of Marion County, Indiana.

[20]Rec. Doc. No. 6-3, pp. 1-3.

[21]Rec. Doc. No. 12-1, p. 3.

[22]Rec. Doc. No. 11, p. 1.

Mar. 16, 2004) (Africk, J.) (applying the standard in the context
of a forum selection clause); *Laserdynamics Inc. v. Acer Am.
Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002)(citing *McCaskey v.
Cont. Airlines Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001),
and *Bigham v. Enirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048
(S.D. Tex. 2000)); *see also* 5 Charles A. Wright, Arthur R. Miller
& Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3826 (1986)
("There are cases holding that the burden is on the objecting
defendant to establish that venue is improper. But 'the better
view,' and the clear weight of authority, is that, when objection
has been raised, the burden is on the plaintiff to establish that
the district he chose is a proper venue."). The party
challenging the validity of the clause bears a "heavy burden of
proof, even when the selected forum is remote." *Dorsey v. No.
Life Ins. Co.*, No. 04-0342, 2004 WL 2496214, at *5 (E.D. La. Nov.
5, 2004) (Africk, J.) (citing *M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1, 17, 92 S. Ct. 1907, 1917, 32 L. Ed. 2d 513 (1972)).

The resolution of a motion to dismiss based on a forum
selection clause involves issues of fact that must be resolved by
limited evidentiary submissions. *Smith v. Prof. Claims, Inc.*, 19
F. Supp. 2d 1276, 1278 (M.D. Ala. 1998). However, "[i]n the
absence of an evidentiary hearing on the matter, courts will
allow a plaintiff to carry the burden by establishing facts,

taken as true, that establish venue." *Laserdynamics*, 209 F.R.D.
at 390. In applying the foregoing standard, the uncontroverted
facts contained in the plaintiff's complaint will be taken as
true and any factual conflicts demonstrated in the parties'
documents and affidavits will be resolved in the plaintiff's
favor. *See id.* (citing *McCaskey*, 133 F. Supp. 2d at 523).

        The Fifth Circuit has squarely held that the enforceability
of a forum selection clause is a question of federal law.
*Haynsworth v. The Corp.*, 121 F.3d 956, 962 & nn. 10 & 11 (5th
Cir. 1997). Federal law applies "whether jurisdiction be based
on diversity, a federal question, or some combination of the
two." *Id.*

        Before a court can consider enforcing a forum selection
clause, "it first must decide whether the clause applies to the
type of claims asserted in the lawsuit." *Terra Int'l, Inc. v.
Miss. Chem. Corp.*, 119 F.3d 688, 692 (8th Cir. 1997) (determining
the scope of a forum selection clause with respect to a motion to
transfer brought pursuant to 28 U.S.C. § 1404(a)); *see also
Anselmo v. Univision Group, Inc.*, No. 92-1471, 1993 WL 17173, at
*1 (S.D.N.Y. Jan. 15, 1993)("In order to enforce a forum
selection clause, the court must first determine whether the
plaintiff's claims are ones contemplated under the terms of the
clause."). In making that decision, this Court "must look to the

language of the parties' contracts to determine which causes of
action are governed by the forum selection clause." *Marinechance
Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998);
*Anselmo*, 1993 WL 17173, at *1 ("The applicability of a forum
selection clause is governed by objective consideration of the
language of the clause.")(internal quotation and citation
omitted).  "[I]f the substance of [the plaintiffs' claims],
stripped of their labels, does not fall within the scope of the
clause[ ], the clause [ ] cannot apply." *Roby v. Corp. of
Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993).

Plaintiffs have made allegations sounding in both contract
and tort, prompting the question as to whether their tort claims
can "arise under" the independent contractor agreements.[23]  The
Fifth Circuit has expressly rejected a general distinction
between tort and contract claims with respect to an analysis of
whether particular claims fall within the scope of a forum
selection clause. *Marinechance*, 143 F.3d at 221-22 (5th Cir.
1998) ("We find no persuasive support for such a general
distinction.").  However, as this Court has noted, the fact that
there is no general distinction between tort and contract claims

---

[23]In *Lucent*, this Court noted that the word "arising" indicates "origin
or genesis of a thing," and the phrase "arising out of" is usually interpreted
as indicating a causal connection.  2004 WL 515769, at *8.  Black's Law
Dictionary pertinently defines "arise" as "to result (from)."  Black's Law
Dictionary 102 (7th ed. 1999).

does not resolve the question of whether plaintiffs' claims fall within the forum selection clause.  *Lucent*, 2004 WL 515769 at *9. The Fifth Circuit has not adopted any single test for answering this question.  *Id.*

The Fifth Circuit has generally stated, "[W]e must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses." *Marinechance*, 143 F.3d at 222.  "Examination of the merits of any of the claims or defenses need not be made."  *Lucent*, 2004 WL 515769 at *9 (*quoting Farmland Indus., Inc. v. Fazier-Parrott Commodities, Inc.*, 806 F.2d 848, 850 (8th Cir. 1987), *abrogated on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989)).

A number of other Circuits have formally adopted rules to address whether tort claims fall within the scope of a contractual forum selection clause.  The Eighth Circuit has succinctly delineated some of these rules:

> The Third Circuit has indicated that where tort claims "ultimately depend on the existence of a contractual relationship" between the parties, such claims are covered by a contractually-based forum selection clause.  *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir.), *cert. denied*, 464 U.S. 938, 104 S. Ct. 349, 78 L. Ed. 2d 315 (1983). In *ManettiFarrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988), the Ninth Circuit stated that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." The First

> Circuit has phrased its test slightly differently,
> explaining that "contract-related tort claims involving
> the same operative facts as a parallel claim for breach
> of contract should be heard in the forum selected by
> the contracting parties." *Lambert v. Kysar*, 983 F.2d
> 1110, 1121-22 (1st Cir. 1993).

*Terra*, 119 F.3d at 694.

In *Terra,* the parties entered into a licensing contract with a forum selection clause providing, in pertinent part, that "any dispute or disputes arising between the parties hereunder" must be litigated in Mississippi.  *Id.* at 690.  After finding that this forum clause language applied only to disputes arising under the licensing agreement,[24] the Court analyzed whether plaintiff's tort claims arose under the agreement.[25]  Following the First Circuit's approach in *Lambert*, the Eighth Circuit held, "The same exact facts surrounding Terra's tort claims would also give rise to a breach of contract claim."  Therefore, the Court concluded that the forum selection clause applied to plaintiff's tort claims.  *Id.* at 695.

Similarly, in *McNair v. Monsanto Co.*, the Court relied on *Terra* to find that the forum selection clause governing "all disputes arising under this Agreement" applied to the plaintiffs'

---

[24]*Terra*, 119 F.3d at 693.  The Eighth Circuit rejected the district court's broader interpretation of the clause as covering any dispute between the parties.  *Id.* at 693.

[25]Under the licensing agreement, the plaintiff paid the defendant to use the defendant's neutralizer technology at its manufacturing facility.  After an explosion occurred at that facility, the plaintiff filed the lawsuit.  *Id.* at 690.

-12-

tort claims.  279 F. Supp. 2d 1290, 1307 (M.D. Ga. 2003).  The
*McNair* plaintiffs brought claims of breach of warranty,
negligence, misrepresentation, and fraud against defendants based
on their sale to the plaintiffs of poor performing cotton seed.
*Id.* at 1294.  The Court found that all of the plaintiffs' claims
arose under the sale agreement because all of the claims arose
from the purchasing and planting of cotton seed.  The Court also
noted that to transfer the contract claims, but not the tort
claims, would neither promote justice nor be an efficient use of
resources.  *Id.* at 1307-08.

B. *Applicability of the Forum Selection Clause to NCA/ICS*

         Guided by precedent, including this Court's exhaustive
analysis in *Lucent*, the Court must examine plaintiffs' specific
claims in this case to determine whether they "arise under" the
independent contractor agreements.  First, plaintiffs allege
breach of contract as to the agreements entered with plaintiffs
and defendants.[26]  Alleging breach of the independent contractor
agreements clearly constitutes a dispute "arising under" those
agreements and the forum selection clause must apply.  CSP also
alleges breach of the recruiting agreement, which was executed
prior to the independent contractor agreements.[27]  Under the

---

[26]Rec. Doc. No. 1-1, pp. 17-20.

[27]Rec. Doc. No. 1-1, pp. 18-19.

*Lambert* test, the Court finds that resolution of that claim would still "involve the same operative facts" as the other breach of contract claims.[28]   *See Lambert*, 983 F.2d at 1121-22.   Moreover, as *McNair* held, to retain jurisdiction over this one breach of contract claim but not the others "would neither promote justice nor be an efficient use of resources."[29]   279 F. Supp. 2d at 1307-08.   Therefore, the forum selection clause applies to plaintiffs' breach of contract claims.

Second, plaintiffs' allege that defendants misrepresented that: 1) defendants would honor in good faith their agreements with plaintiffs; 2) defendants could timely administer plaintiffs' claim submissions; and 3) that defendants' processes and procedures were adequate.[30]   These alleged misrepresentations all depend on the contractual work arrangement between plaintiffs and defendants.   Since the misrepresentation claim will "ultimately depend on," and "relates to interpretation of," the agreements, the misrepresentation claim must "arise under" the agreements.   *Terra*, 119 F.3d at 694.

---

[28]Since CSP alleges that defendants failed to timely pay for its services under both agreements, the factfinder would have to examine all payments to determine what was properly owed and paid to CSP under the independent contractor agreement and resolve what payments had been improperly handled between the same parties under the recruiting agreement.

[29]To the extent that plaintiffs' other claims, discussed *infra*, implicate the recruiting agreement as well, the rationale of *Lambert* and *McNair* is equally applicable.

[30]Rec. Doc. No. 1-1, p. 13.

Third, plaintiffs allege negligence through unspecified "acts and omissions" by the defendants involving claims handling.[31]  While the full basis of plaintiffs' negligence claim is unclear, plaintiffs state that the claim "arose out of the same transactions and occurrences related to ... the claims handling."[32]  Since the claims handling process between plaintiffs and defendants is the subject of their independent contractor agreements, the negligence claim "involves the same operative facts" under *Lambert*.  Therefore, the forum selection clause applies to plaintiffs' negligence claim.

Fourth, plaintiffs' claim of conversion centers on defendants' allegedly taking equipment and documents from Top Catastrophe, as well as withholding fees owed to plaintiffs.[33] The fees dispute is plainly tied to the agreements and must "arise under" them.  The conversion claim will also ultimately depend, at least in part, on who rightfully owns the documents and reports in question.[34]  Therefore, since the conversion claim will "ultimately depend on," and "relates to interpretation of," the agreements, the conversion claim "arises under" the

---

[31]Rec. Doc. No. 1-1, pp. 21-22.

[32]Rec. Doc. No. 1-1, p. 22.

[33]Rec. Doc. No. 1-1, p. 17.

[34]If they are contractual work product under the agreements, then they may rightfully belong to defendants.

-15-

agreements. *Terra*, 119 F.3d at 694.

Finally, plaintiffs' claim of unfair trade practices[35] centers on allegations that defendants hired plaintiffs' employees and withheld payments from plaintiffs to sabotage their business.[36]  To the extent that this claim involves contractual payments, it must "arise under" the agreements as ultimately dependant upon what payments plaintiffs were entitled to and received under those agreements.  As to plaintiffs' hiring allegations, plaintiffs still must prove "some element of fraud, misrepresentation, deception or other unethical conduct." *Omnitech*, 11 F.3d at 1332.  In meeting this requirement, plaintiffs will have to establish the permissible bounds of their relationship with defendants under the agreements, and then further prove that defendants' conduct exceeded those bounds to such an extent as to be "unfair."  Under the *Lambert* test, as

---

[35]Under the Louisiana Unfair Trade Practices Act (LUPTA): to establish that a defendant's business actions were "unfair," the plaintiff must demonstrate that they offended "established" public policy and were "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Monroe Medical Clinic, Inc. v. Hospital Corp. of America*, 522 So.2d 1362, 1365 (La.Ct.App.1988). Thus, to recover under the LUPTA, [plaintiff] would have to "prove some element of fraud, misrepresentation, deception or other unethical conduct." *Dufau v. Creole Engineering, Inc.*, 465 So.2d 752, 758 (La.Ct.App.), *writ denied*, 468 So.2d 1207 (La.1985). The courts interpreting the LUPTA have been hesitant to impose liability where the evidence reveals merely a normal business relationship.

*Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994).

[36]Rec. Doc. No. 1-1, p. 14.

-16-

with the misrepresentation and fraud claims in *McNair,*
plaintiffs' unfair trade practices claim is within the scope of
the forum selection clause.  The cases cited by plaintiffs are
distinguishable on the facts.[37]

   *C. Unreasonableness of the Forum Selection Clause*

   Having found that the scope of the forum selection clause is
sufficiently broad to cover all claims brought by the plaintiffs,
the clause is valid and will be enforced "unless enforcement is
shown by the resisting party to be 'unreasonable' under the
circumstances." *The Bremen*, 407 U.S. at 10, 92 S. Ct. at 1913.[38]
Enforcement of the forum selection clause may be deemed
unreasonable where (1) the incorporation of the forum selection
clause into the agreement was the product of fraud or

───────────────

[37]Plaintiffs cite to *Imation Corp. v. Quantum Corp.*, Case No. 01-1798,
2002 WL 385550 (D. Minn. Mar. 8, 2002), where the Court held that plaintiff's
antitrust claims were not within the forum selection clause. *Id.* at *5.
However, the plaintiff there alleged that the defendant engaged in anti-
competitive behavior for at least two years prior to the signing of the
agreement containing the forum selection clause. *Id.* at *2. Therefore, the
Court found that the plaintiff's antitrust claims could not ultimately depend
on that later-signed agreement. *Id.* at *5. Likewise, the plaintiffs' claims
in *Armco, Inc. v. N. Atlantic Insurance Co.*, 68 F. Supp. 2d 330 (S.D.N.Y.
1999), were based on "numerous pre-contract activities" and fraud in the
negotiation of the contract itself. *Id.* at 339. By contrast, defendants
alleged violations in this case occurred when the agreements containing the
forum selection clause were in force.
   Moreover, this Court's own holding in *Lucent* depended on the fact that
the "borrower/lender relationship embodied in the 2000 Agreement [was]
distinct from the customer/supplier relationship implicated by" the
plaintiff's claims. *Lucent*, 2004 WL 515769, at *15. There is no such
distinction in this case.

[38]*See also Haynsworth*, 121 F.3d 956, 963 (5th Cir. 1997) (quoting
*Bremen*, 407 U.S. at 10, 92 S. Ct. at 1913) ("The presumption of enforceability
may be overcome, however, by a clear showing that the clause is
'"unreasonable" under the circumstances.'").

overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.[39] *Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522, 1528, 113 L. Ed. 2d 622 (1991)).[40]

Plaintiffs presumably seek the protection of the public policy exception, asserting, "the overriding policy to keep this litigation in the Eastern District of Louisiana is so great as to overcome the general forum selection presumption of validity."[41] The Fifth Circuit has rejected an analogous argument that upholding a forum selection clause "would contravene Louisiana public policy to regulate property and actions within its borders." *Hartash Const., Inc. v. Drury Inns, Inc.*, 252 F.3d 436 (5th Cir. 2001) (per curiam)(unpublished decision).  The *Hartash* court noted that plaintiff had not identified any caselaw to

---

[39]The party resisting enforcement on grounds of unreasonableness bears a "heavy burden of proof."  *Bremen*, 407 U.S. at 17, 92 S. Ct. at 1917.

[40]The *Bremen* standard of enforceability applies to motions to dismiss based on a contractual forum selection clause even where personal jurisdiction exists and venue is otherwise proper. *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996).

[41]Rec. Doc. No. 12-1, p. 3.

support such a policy.  *Id.*  Cases that have given serious consideration to the public policy exception involve specific statutes or caselaw supporting that argument.[42]

Plaintiffs cite no caselaw or statute in support of their proposition, nor is this Court aware of any such law.  Instead, plaintiffs make general assertions that forcing this litigation to the courts of Indiana would "shelve another Katrina victim to an unconcerned litigation wasteland," and "remove any of the personal perspective of the local community."[43]  This Court is certainly not unsympathetic to the difficulties faced by many in the wake of Hurricane Katrina.  However, as defendants assert, this is a lawsuit arising from an alleged breach of contract between sophisticated out-of-state business entities.[44]  Plaintiffs have failed to meet the heavy burden of proof necessary to defeat the forum selection clause.

---

[42]*See, e.g.*, *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 302 (5th Cir. 1998) ("Initially, we must determine, therefore, whether the equitable resolution afforded by the Limitation Act is a 'strong' public policy that justifies overcoming the forum-selection clause."); *Rogers, Lynch & Assoc. LLC. v. Riskfactor Solutions, Ltd.*, No. 03-1399, 2004 WL 385064, at *5 (E.D. La. Mar. 1, 2004) (Vance, J.) ("Defendant focuses on the fourth factor and argues that enforcement of the forum selection clauses would contravene Louisiana public policy.  Defendant points to Louisiana Revised Statute 51:1407....").

[43]Rec. Doc. No. 12-1.

[44]Indeed, plaintiffs are incorporated, headquartered, or domiciled in Delaware, Nevada, and Alabama, not in the Eastern District of Louisiana.  Rec. Doc. No. 1-1, p. 1.  Their contractor agreements list their offices as Mesa, Arizona and Mobile, Alabama.  Rec. Doc. No. 6-4, pp. 3-4.

*D. Applicability of the Forum Selection Clause to St. Paul*

Since St. Paul is not a signatory to either independent contractor agreement, it asserts that the forum selection clause does not apply to plaintiffs' claims against St. Paul.[45]   The Fifth Circuit has held, "Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so.  Six theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Bridas Sapic v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003) (internal citations omitted).  The Court has found that these principles are applicable to forum selection clauses. *Hellenic Inv. Fund, Inc. v. Det Norske Veritas,* No. 05-20862, 2006 U.S. App. LEXIS 22812, at *6 (5th Cir. Sept. 7, 2006).

The Fifth Circuit "appears to view the decision [as to whether agency exists] as a mixed question of law and fact, dominated by factual determinations and thus subject to review only for clear error." *Bridas*, 345 F.3d at 356.  In *Bridas*, the Fifth Circuit explored the agency exception:

Agency is "the fiduciary relation which results from the manifestation of consent by one person to another

---

[45]Rec. Doc. No. 11, p. 1.

```
that the other shall act on his behalf and subject to
his control, and consent by the other so to act."
Restatement (Second) of Agency § 1(1) (1958).  An
agency relationship may be demonstrated by "written or
spoken words or conduct, by the principal, communicated
either to the agent (actual authority) or to the third
party (apparent authority)."
```

*Id.* at 356-357.

St. Paul challenges the merits of plaintiffs' agency claim, arguing that no such agency relationship exists and, therefore, the *Bridas* exception allowing enforcement of the forum selection clause is inapplicable.[46]  However, as stated, in determining the applicability of a forum selection clause, the Court will accept uncontroverted facts contained in the plaintiff's pleadings as true, and resolve any conflicts in the parties' documents and affidavits in the plaintiff's favor.  *Lucent*, 2004 WL 515769, at *6; *Laserdynamics*, 209 F.R.D. at 390.  While a defendant need not affirmatively disprove all bases for a plaintiff's choice of venue, courts will provide the plaintiff the benefit of the doubt in ascertaining the controlling facts.  *Id.*

Turning to plaintiffs' complaint, plaintiffs allege that St. Paul is liable because it contracted with NCA/ICS as its "agents and representatives," who in turn contracted with CSP "on behalf of themselves and St. Paul's."[47]  Plaintiffs further allege, "At

---

[46]Rec. Doc. No. 5-6, pp. 5-6.

[47]Rec. Doc. No. 1-1, p. 3.

-21-

all material times following the storm, NCA Group and ICS worked
under the expressed, implied, or constructive authority and
direction ... of St. Paul."[48]  Therefore, plaintiffs have alleged
both the consent and control elements required for agency.
Affording plaintiffs the benefit of the doubt in ascertaining
these controlling facts, the Court finds that there is sufficient
evidence of agency between St. Paul and NCA/ICS such that St.
Paul is bound by the forum selection clause despite its
nonsignatory status.  *Bridas*, 345 F.3d at 356.[49]

 *E. Dismissal as a Remedy for Improper Venue*

 Title 28 of the United States Code, section 1406(a) provides
the Court with the power to "dismiss, or if it be in the interest
of justice, transfer [a] case to any district or division in

---

[48]Rec. Doc. No. 1-1, p. 12.

[49]St. Paul asserts that *Bridas* mandates a different outcome.  Rec. Doc.
No. 11, pp. 5-6.  In *Bridas*, the Court held that the agency exception was
inapplicable because the three pieces of evidence on which the district court
relied were insufficient to support an agency determination "given the
language and structure" of the agreement.  345 F.3d at 357.  However, the
*Bridas* ruling dealt with an arbitration clause, the validity and impact of
which had already been disputed in "19 days of [arbitral] hearings, various
expert reports, testimony" and other evidence.  The *Bridas* lawsuit then
proceeded over plaintiff's attempt to confirm the final arbitration award.
*Id.* at 352.  The district court in *Bridas* had the benefit of full discovery
and an evidentiary record on which to make its agency determination as to the
applicability of the arbitration clause.
 By contrast, this Court must resolve the present venue dispute before
litigation on the merits has commenced.  To do otherwise would defeat the very
purpose of a forum selection clause by retaining jurisdiction in the improper
venue.  There is no complete evidentiary record before the Court, and
therefore it is appropriate to resolve the conflicting facts underlying the
agency determination dispute here in plaintiff's favor.  *See Lucent*, 2004 WL
515769, at *6; *Laserdynamics*, 209 F.R.D. at 390.  St. Paul may litigate the
merits of plaintiffs' agency allegations against it in the appropriate venue.

which it could have been brought."  The Fifth Circuit has found that dismissal of a lawsuit under Rule 12(b)(3) is an appropriate means of enforcing a forum selection clause.  *Lim v. Offshore Specialty Fabricators, Inc.*  404 F.3d 898, 902 (5ᵗʰ Cir. 2005); *Int'l. Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996) (citing *Zapata Marine Serv. v. O/Y Finnlines, Ltd.*, 571 F.2d 208 (5th Cir. 1978)).  The Fifth Circuit has also held, in considering a motion for dismissal based on a state court forum selection clause, that a district court need not undertake to balance factors as it would for a motion to transfer under section 1404(a).  Therefore, if enforcement of the clause is appropriate under *Bremen*, dismissal of the case is proper. *Id.* at 115.

Since this Court has found that the forum selection clause here must be enforced, and since it mandates litigation in Marion County, Indiana, dismissal is appropriate.  Plaintiffs may pursue their claims against defendants in the courts of Marion County as the applicable rules of civil procedure permit.[50]

Accordingly,

**IT IS ORDERED** that defendants' motion to dismiss for

---

[50]Since venue before this Court is improper, the Court makes no judgment as to the validity of the choice of law provisions contained within the agreements.

improper venue[51] is **GRANTED** and plaintiffs' lawsuit is **DISMISSED** in its entirety.   All other pending motions are **DISMISSED AS MOOT**.   Plaintiffs may file this lawsuit in the appropriate venue, the courts of Marion County, Indiana, as the applicable rules of civil procedure permit.

New Orleans, Louisiana, October ___18th___, 2006.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[51]Rec. Doc. No. 6-1.